IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>　　　Plaintiff/Respondent,  )<br>  )<br>v.  )<br>  )<br>TJ CAIN,  )<br>a/k/a THOMAS J. CAIN,  )<br>  )<br>　　　Defendant/Movant.  ) | Criminal Case No. CR-18-44-RAW<br><br>Civil Case No. CV-22-11-RAW |

## ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant TJ Cain, a/k/a Thomas J. Cain ("Defendant"). [CR Doc. 142; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 147]. Defendant did not file a reply. Also before the court is Defendant's motion for appointment of counsel. [CR Doc. 148].

On April 11, 2018, a federal grand jury charged Defendant with felon in possession of firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e). The jury was unable to reach a unanimous verdict, and this court declared a mistrial on July 20, 2018. [CR Doc. 50]. Defendant was represented by Donn F. Baker in the first trial. Mr. Baker underwent quintuple bypass surgery on July 28, 2018. [CR Doc. 59].

On August 14, 2018, a federal grand jury charged Defendant with one count of felon in possession of firearm ("Count 1"), and one count of felon in possession of ammunition ("Count 2"), both in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e). An unopposed motion to withdraw was filed by Mr. Baker on August 16, 2018, which was granted, and Martin G. Hart entered an appearance for Defendant on August 22, 2018.[1] [CR Docs. 59, 60, and 61]. A second jury found Defendant guilty on both counts.

---

[1]　　Mr. Baker departed this life on November 12, 2020. https://nafusa.org/2020/11/former-us-attorney-donn-f-baker-dies-71/ (last visited March 7, 2025).

A presentence investigation report ("PSR") was prepared by the probation office. The PSR provided the following information:

> On September 29, 2017, at approximately 0500 hours, officers with the Stilwell, Oklahoma, Police Department received a report of a man identified as T.J. Cain shooting at a home from his vehicle. During the investigation in this matter, it was reported that following an altercation at that residence, Cain fired one round from his vehicle into the air and then left the area in his vehicle, a white Chevrolet 1500 pickup. A short time later, officers observed a vehicle matching the description of the suspect vehicle and attempted to initiate a traffic stop. The vehicle, however, did not stop, and a pursuit ensued. The suspect vehicle crashed in a ditch near the intersection of East 814 Road and North 4680 Road in Stilwell, and a male subject identified as T.J. Cain, who was described as wearing blue jeans and a dark colored hat, exited the vehicle with a handgun in his hand and fled on foot. One of the officers pursued Cain on foot as he ran into a pasture/field area.
>
> During the foot pursuit, gun fire was exchanged between Cain and one of the police officers. An estimated ten rounds were fired by Cain and six rounds were fired by the police officer. According to testimony presented during the Jury Trial in this matter as the officer was chasing Cain through the pasture/field area, Cain turned toward the officer and discharged the firearm in the direction of the officer, firing one round. The officer returned fire. Cain then fired multiple rounds. The officer again returned fire. Cain went to the ground momentarily and then got back up and began walking toward a wooded area. While walking at an angle, Cain turned again toward the officer and fired additional rounds from a one-handed grip. During the exchange, Cain was shot in the leg but continued to flee.
>
> Cain was apprehended approximately thirteen hours later in a wooded area northwest of the intersection. He was described as being pale in color, lethargic, appearing to have lost a lot of blood and be in a state of "shock". As officers took Cain into custody, they asked him where the gun was, to which he responded that he didn't know and that he had thrown it. Cain was placed under arrest and transported by ambulance to a local hospital due to his injuries.
>
> Within approximately five feet of the location where Cain was apprehended, officers recovered a dark colored ball cap and a Tanfoglio .40 caliber Witness model pistol with magazine, bearing serial number MT12307. The firearm was observed with the slide locked backwards, indicating it had been emptied via discharge.
>
> Nine (9) rounds of assorted brand .22 caliber ammunition – five (5) rounds of Remington brand ammunition and four (4) rounds of CCI brand ammunition – were recovered from the center console of Cain's vehicle. Also recovered from the vehicle was a wooden pipe with burned residue, a glass smoking pipe and mail in the name of [Defendant's deceased mother].

2

>   Cain has been previously convicted of felony drug and firearm offenses in Washington County, Arkansas, Adair County, Oklahoma, and the United States District Court for the Northern District of Oklahoma; thereby, prohibiting him from possession of firearms and ammunition.
>
>   The firearm recovered in this matter was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for examination and analysis. It was determined to be a S&W .40 caliber semi-automatic pistol, Model Witness-P, bearing serial number MT12307, manufactured in Italy by Tanfoglio. Through a firearm trace, ATF agents determined the firearm had been stolen from a residence in Stilwell, Oklahoma, in the Fall of 2017; however, the owner did not make a police report for the stolen firearm. The ammunition recovered in this matter was also submitted to the ATF for identification and was determined to have been manufactured outside the State of Oklahoma.

[*PSR* at ¶¶ 11-17].

Mr. Hart filed four objections to the PSR, which were overruled at the sentencing hearing on May 16, 2019. [CR Doc. 112 at 1]. The court ordered the PSR to be revised (e.g., to reflect the dismissal of Adair County charges) and found the PSR with revisions would form the factual basis for sentencing. [CR Doc. 112 at 1; CR Doc. 133 at 24]. The court dismissed Count 2 (the ammunition count), on the Government's motion, "to avoid multiplicity." [CR Doc. 112 at 2; CR Doc. 114; CR Doc. 133 at 23]. Defendant was sentenced to 120 months of imprisonment on Count 1, to be served consecutively to the term of imprisonment imposed by this court in a revocation case, EDOK Criminal Case No. CR-16-00096-RAW. [CR Doc. 112 at 1]. Judgment was entered on May 20, 2019. [CR Doc. 117]. Defendant filed an appeal, asserting that his confession was involuntary and his waiver of his *Miranda* rights was invalid. *See United States v. Cain*, 800 Fed.Appx. 672, 673 (10th Cir. Apr. 7, 2020) (unpublished). Defendant conceded that "he never moved to suppress the evidence of the confession and the firearm that resulted from it," and argued "that the admission of that evidence was plain error." *Id*. The Tenth Circuit affirmed this court's judgment. *Id*.

Defendant now argues in his § 2255 motion that "his trial attorney failed to file a motion to suppress." [CR Doc. 142 at 4]. He reminds the court that he had two jury trials, and that neither attorney filed a motion to suppress. *Id*. Defendant claims "the second attorney stated it was not part of either attorney's trial strategy." *Id*. Defendant asserts that Mr. Hart, the attorney in the retrial, "completely relied on the theory of defense from the first attorney." *Id*. He further

contends that "Mr. Hart did not conduct any independent investigation or interview any witnesses" and that Defendant's "due process rights were violated." *Id*. He claims that the "*Miranda* and Due Process violations were raised [on direct appeal] but because the issues were not litigated below, they were precluded from review on direct appeal." *Id*.

In response, the Government concedes that Defendant's § 2255 motion is timely, but otherwise asserts that the motion is without merit and should be dismissed. [CR Doc. 147 at 4]. The Government contends that the claims in Defendant's § 2255 motion are procedurally barred. *Id*. The claims, however, appear to be based on ineffective assistance of counsel, and the procedural default rule does not apply to ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Government also argues that Defendant cannot establish ineffective assistance of counsel. [CR Doc. 147 at 6]. The Government contends that "[t]he testimony complained of did not involve police coercion and did not affect the outcome of the jury's decision," and that Defendant's attorneys "understandably omitted filing a motion to suppress because the record would not support one." *Id*. at 8. In addition, the Government asserts that "Mr. Hart clearly knew from the first trial the facts of the case, the evidence to be presented, and the proposed testimony of the witnesses," that "Mr. Baker presented a fully-formed theory" in the first trial to explain the crime, and that "Mr. Hart had limited incentive to undermine Mr. Baker's conclusions." *Id*. at 9. The court will address the merits of Defendant's ineffective assistance of counsel claims.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Referring to when he was ultimately apprehended, Defendant claims "[t]he involuntary confession and the gun were obtained by coercive police pressures that violated [his] Due Process rights and *Miranda*." [CR Doc. 142-1 at 24]. He argues that "[t]rial counsel's failure to move to suppress the confession and the gun violated [his] Sixth Amendment right to the effective assistance of counsel." *Id*. The court disagrees.

Three individuals saw Defendant in possession of a firearm. Two of the witnesses testified that they saw Defendant discharge a firearm outside a home in the early morning hours of September 29, 2017. [CR Doc. 131 at 30-33, 53-57]. The police were called. *Id*. at 34, 55. Later in the trial, Officer Darrel Dugger, one of the officers who responded to the call, testified that he was in pursuit of Defendant when the rear tires of Defendant's truck "caught gravel and it spun out." *Id*. at 84. The officer then "pinned [his] patrol unit against that vehicle trapping it there" in a ditch. *Id*. at 84. The officer exited his vehicle and was using a flashlight as he approached the front passenger side of Defendant's truck. *Id*. at 84-85. The officer testified that Defendant opened "his driver side door with his left hand, and then he reached across his seat and I watched him grab a handgun out of the seat." *Id*. at 86. Defendant exited the truck,

jumped a gate, and started running across a hayfield. *Id*. at 86-88. The officer chased Defendant, and Defendant "turned and fired a round" at the officer. *Id*. at 88-89, 113. The officer and Defendant exchanged gunfire, and at one point, the officer heard Defendant scream as he went to the ground. *Id*. at 91-92. It was still dark at that time before daybreak, and after turning off his flashlight and lying on the ground for a moment, the officer "ran back towards [his] patrol unit to radio for backup and get [his] long rifle to go back and see if [the officers] could find him safely." *Id*. at 92. Defendant moved to a different location but was eventually found and arrested later that day. Officer Dylan Marshall, an officer present at the time of Defendant's arrest, testified as follows:

> Q: Did you notice anything unusual, or any injury about that person?
>
> A: He appeared to not be moving. He appeared to really not be very conscious at the time as if he might have been injured in some way.
>
> Q: And did you see any injury at some point?
>
> A: Yes, I saw a large amount of blood on his leg.
>
> Q: Okay. Did you inquire of him any questions?
>
> A: Yes. Whenever Deputy Ketcher was placing him in handcuffs after he read him his Miranda rights, I asked him where the gun was that he supposedly had.
>
> Q: Okay. Did he indicate where the gun was?
>
> A: Yes. Not verbally, but he moved his head kind of motioning towards another area of the thicket.
>
> Q: Did you look in that area?
>
> A: Yes.
>
> Q: What did you observe?
>
> A. I observed a handgun laying on the ground.

[CR Doc. 131 at 232].

The Government argues, and the court agrees, that "[t]he firearm would have been inevitably discovered once Defendant was located and the thicket where he was found was searched." [CR Doc. 147 at 8]. Under the inevitable discovery doctrine, "illegally obtained

evidence may be admitted if it 'ultimately or inevitably would have been discovered by lawful means.'" *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). In the case at hand, the firearm was "[w]ithin approximately five feet of the location where Cain was apprehended." *PSR* at ¶ 14. The Government further contends that Defendant's firearm conviction would have occurred regardless of whether testimony about his head nod was admitted or not. [CR Doc. 147 at 15]. The argument is persuasive. As noted above, several individuals clearly testified that they saw Defendant in possession of a firearm. Finally, even if suppressing the firearm would have changed the jury's verdict on Count 1, Defendant would have been found guilty of Count 2 for the "[n]ine (9) rounds of assorted brand .22 caliber ammunition" recovered from the center console of Defendant's vehicle. *PSR* at ¶ 15. And he was still facing a 120-month sentence under Count 2. In sum, Defendant has not shown the inaction of not filing a motion to suppress was so unreasonable that it fell outside the wide range of professionally competent assistance under *Strickland*. Defendant was also not prejudiced by his counsel's failure to file a motion to suppress.

Defendant also asserts that Mr. Hart did not conduct any independent investigation or interview any witnesses. Defendant, however, does not assert what information would have been discovered had counsel conducted such investigation or interviews, nor does Defendant explain how he was prejudiced by these alleged failures of counsel. Mr. Hart stated in his affidavit that he relied on the theory of defense and evidence presented by Mr. Baker in the first jury trial. [CR Doc. 142-1 at 25]. Mr. Hart affirmed that he "ordered and reviewed the previous trial transcript, the preliminary hearing transcript from the related state court case and all law enforcement reports." *Id*. Mr. Hart further asserted that he "did attempt to interview additional witnesses to ascertain who else had access to the involved truck in an attempt to account for the ammunition that was found in the console of the truck . . . ." *Id*. Like Mr. Baker at the first trial, Mr. Hart was well-prepared and had a good grasp of the facts at the second trial. In addition, Mr. Hart's objections to the PSR, though overruled, were detailed (totaling 24 pages with attachments), and he argued vigorously on behalf of Defendant at the sentencing hearing. Again, Defendant's claims of ineffective assistance of counsel fail both prongs of the *Strickland* standard and must be denied.

Lastly, Defendant filed a motion for appointment of counsel. [CR Doc. 148]. Though a district court *may* appoint counsel under 18 U.S.C. § 3006A, Defendant's claims are not legally or factually complex. Defendant's request for counsel should be denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 142; CV Doc. 1] is hereby DENIED.[2] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

Defendant's motion for appointment of counsel [CR Doc. 148] is DENIED.

It is so ordered this 10th day of March, 2025.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[2] The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.